## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DIONTE WADE,                                    CASE NO. 3:24 CV 1158

     Plaintiff,

     v.                                            JUDGE JAMES R. KNEPP II

PUT-IN-BAY POLICE
DEPARTMENT, et al.,
                                                **MEMORANDUM OPINION AND**
     Defendants.                                  **ORDER**


### INTRODUCTION

Pending before this Court is a Motion to Dismiss for Failure to State a Claim filed by Defendants Put-In-Bay Police Department; Village of Put-In-Bay, Ohio; and Put-In-Bay Police Officers Joshua Durda, Kyle Martin, Yuri Linetsky, Eric Seitz, Ashley McMicheaux, and David Fenstermaker. (Doc. 5). Plaintiff Dionte Wade responded (Doc. 7), and Defendants replied (Doc. 8). Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons discussed below, the Court grants Defendants' Motion.

### BACKGROUND

The facts presented in the Complaint are accepted as true for the purposes of a motion to dismiss. *Haviland v. Metro. Life Ins. Co.*, 730 F.3d 563, 566–67 (6th Cir. 2013). Those facts are as follows.

On July 24, 2022, Plaintiff was employed as a security guard at The Bayshore Resort ("the Resort") in Put-In-Bay, Ohio, when his employer called both him and Put-In-Pay Police Department to respond to a disturbance. (Doc. 1, at 8). Upon his arrival at the Resort, Officers

Durda and Martin were already present. *Id.* Immediately, Plaintiff observed a disturbance on the second floor of the Resort, saw a woman on the ground with an Officer's[1] knee to her back, and heard Officers yelling at people to not record the incident. *Id.* Plaintiff, wearing his Resort shirt, identified himself to the Officers as resort security and attempted to de-escalate the situation by moving the crowd away from the Officers. *Id.* at 8–9. After Officers "swore at", "shoved", and "taunted" Plaintiff and others, Plaintiff told onlookers that they had a right to record; at some point, Plaintiff began recording the incident himself on his phone. *Id.* at 9. An Officer (which appears to be either Officer Durda or Martin) then shoved Plaintiff against a wall by his neck, shoulder, and chest area, confiscated his phone, handcuffed him, and forced him into a police cruiser, causing injury to his head from contact with the vehicle. *Id.*

Plaintiff was arrested and taken to the police station, but not informed why nor read his rights. *Id.* He was charged with obstructing official business, requiring a bond of $375.00. *Id.* at 10. Plaintiff hired an attorney to address the charges, costing him $750.00, but they were later dismissed. *Id.*

Plaintiff's Complaint brings six Counts: (1) retaliation against all individual Officers; (2) excessive force against all individual Officers; (4) unlawful search and seizure against all individual Officers; (5) failure to intervene against Officers Linetsky, Seitz, McMicheaux, or Fenstermaker; and (6) failure to train and supervise against Village of Put-In-Bay and Put-In-Bay Police Department. *See* Doc. 1.

---

1. After noting Officers Durda and Martin were on the scene upon his arrival, Plaintiff never again indicates which specific Officer he is referring to in these factual allegations. Unless stated by the Court, it is unclear whether this or any subsequent use of "Officer" refers to Durda, Martin, Linetsky, Seitz, McMicheaux, or Fenstermaker.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), a complaint will only survive if it states a plausible claim for relief on its face. *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To do so, the complaint must state factual allegations that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *Iqbal*, 556 U.S. at 678). A complaint is not required to contain "detailed factual allegations," but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). When deciding a motion to dismiss, this Court presumes all factual allegations in the complaint to be true and makes all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 685 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). This requires a court to analyze separately whether the plaintiff has plausibly alleged a constitutional violation by *each* defendant, and it may not attribute the actions of all defendants to any one individual defendant. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011).[2]

---

2. Plaintiff appears to argue this Court should take judicial notice of the body cam footage from the incident to help the Complaint satisfy the pleading standard. (Doc. 7, at 3). This Court is not inclined to address such an argument, as no videos have been provided to it.

**DISCUSSION**

Defendants argue they are entitled to dismissal of all Counts for four reasons. First, they assert the Complaint fails to meet the pleading standard against the individual Officers by not identifying any specific actions taken by any specific Officers. (Doc. 5, at 3). Second, Defendants claim all Officers are entitled to qualified immunity. *Id.* Third, Defendants argue the Count against Village of Put-In-Bay fails to allege municipal liability. *Id.* at 9. And Fourth, Defendants assert Put-In-Bay Police Department is incapable of being sued. *Id.* at 10.

Because the Court finds all claims can be resolved by Defendants' other arguments at this juncture, and "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity", the Court finds it unnecessary to reach the issue of qualified immunity. *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)).

The Complaint states allegations against the Defendant Officers as either "Assisting Officers" or "Arresting Officers." As such, the Court discusses the sufficiency of such allegations as to the groups of Defendants set forth in the Complaint.

<u>Assisting Officers (Linetsky, Seitz, McMicheaux, and Fenstermaker)</u>

Plaintiff's Complaint refers to Officers Linetsky, Seitz, McMicheaux, and Fenstermaker collectively as "Assisting Officers." *See* Doc. 1. But it fails to allege any particular actions or specific facts regarding any individual Assisting Officer.[3] For example, it is unclear to the Court

---

3. In addition to defining the group of Officers and using it in Count headings, the term "Assisting Officers" is only used one time. Every other factual allegation regards "Defendants" as a whole or the Arresting Officers.

4

when any of these Officers arrived at the scene, or if any of them interacted with Plaintiff in any way on the day in question.

For this reason, as discussed in further detail below, Officers Linetsky, Seitz, McMicheaux, and Fenstermaker are entitled to a dismissal of all claims against them in this case.

*Retaliation, Excessive Force, False Arrest, Unlawful Search and Seizure*

As to Counts One through Four, Plaintiff alleges no actions or involvement of any Assisting Officer that would reasonably lead to an inference of liability. For each of these claims, Plaintiff only alleges actions of wholly unidentified Officers or Arresting Officers; these Counts fail to even assert a relevant action of the previously narrowed "Assisting Officers" class, let alone any one of them specifically. *See* Doc. 1, at 11–14.

Even taking all allegations in the Complaint as true, there are none that tie the actions of any individual Assisting Officer to any of these claims. *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ("Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that *each* Defendant is liable for retaliation."). As such, these Defendants are entitled to a dismissal.

*Failure to Intervene*

Defendants argue Plaintiff's failure to intervene claim fails on two grounds: first, because Plaintiff failed to properly plead excessive force, and second, because Plaintiff failed to identify facts that reasonably allege responsibility of any Assisting Officer for failure to intervene. (Doc. 5, at 9). Plaintiff maintains that all Defendants had a duty to intervene when Arresting Officers were violating his constitutional rights through the use of excessive force. (Doc. 7, at 9).

To establish failure to intervene a plaintiff must allege defendants: (1) "observed or had reason to know that excessive force would be or was being used" and (2) "had both the opportunity

and the means to prevent the harm from occurring." *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

Plaintiff fails to plead facts that meet either requirement of a failure to intervene claim. The Complaint gives no indication as to which Assisting Officers, if any, were present, witnessed the use of force, had time to intervene, or were otherwise in a position to intervene. There are no allegations regarding the physical proximity of any Assisting Officers to the alleged excessive force, nor any facts suggesting that the force occurred over a sufficient period of time to allow meaningful intervention. Absent factual allegations establishing the Assisting Officers had knowledge of the force and a realistic opportunity to act, Plaintiff's failure to intervene claim does not survive dismissal.

Arresting Officers (Durda and Martin)

Plaintiff's Complaint refers to Officers Durda and Martin as, collectively, "Arresting Officers" and alleges no specific actions of either as an individual. *See* Doc. 1. Defendants argue treating both officers as one person, without specifying any individual actions from either, requires dismissal. *See* Doc. 5.

The Sixth Circuit has allowed similarly pleaded claims—where particular actions were not clearly attributed to particular defendants—to move forward in limited circumstances; namely, when a plaintiff is unable to separate the actions of officers due to some impairment created by the defendants. *See Batson v. Hoover*, 788 F. App'x 1017, 1018 (6th Cir. 2019) (allowing non-specific claims to move forward where the plaintiff claimed to have been blinded by pepper-spray from defendants); *see also Fazica v. Jordan*, 926 F.3d 283, 292 (6th Cir. 2019) (allowing non-specific claims to move forward where plaintiff claimed defendants put a spit mask on her that covered her eyes).

6

Here, Plaintiff asserts no action taken by any Defendant that impaired his ability to distinguish them. Nor does he provide any other reason, even in opposition, as to why he would not have been able to identify which Officer did what and who was on the scene. Instead, Plaintiff's Opposition asserts that Defendants have not voluntarily produced video footage *additional to* what he already has, while at the same time admitting he has the body cam footage from all but one Officer. (Doc. 7, at 9–10). At the pleading stage, it is Plaintiff's burden—not Defendants'—to allege specific factual content that plausibly supports each element of the claim as to each Defendant. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007–08 (7th Cir. 2021). As such, and as further discussed below, the Court grants Defendants' Motion to Dismiss as to all claims against Officers Martin and Durda.

*Retaliation*

Plaintiff contends Officers Durda and Martin violated his First Amendment rights through excessive force in response to recording police actions, which he claims is a protected right. (Doc. 7, at 5).

A First Amendment retaliation claim requires: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff's First Amendment retaliation claim fails to identify which Officer engaged in the alleged retaliatory conduct. First, after previously and explicitly describing conduct as being done by a singular Officer, Count One repeats the same alleged conduct but precedes it by referring to the Arresting Officers jointly as taking "retaliatory action". *See* Doc. 1, at 4 ("*an officer* from the

7

Put-In-Bay Police Department shoved Plaintiff against a wall by his neck, confiscated Plaintiff's phone without cause as he was recording, placed Plaintiff in handcuffs, and forcefully threw Plaintiff in *his* police cruiser.") (emphasis added); *then see id.* at 11 ("*they* used excessive force and shoved Plaintiff against a wall and forcefully held him against wall by his neck, shoulder, and chest area; grabbed Plaintiff's phone so he could not record the incident; and forced Plaintiff into *his* cruiser") (emphasis added). Second, this Count alleges actions of entirely unnamed Officers. *See id.* at 12 ("the Officer told another Officer to 'grab the one in purple'").

Absent specific allegations regarding either Arresting Officer's alleged retaliatory actions, Plaintiff's retaliation claim cannot proceed against Defendants Durda and Martin.

*Excessive Force*

Though Count Two does not specifically describe any actions it alleges to be excessive force, the Complaint elsewhere states that either unnamed Officers, all Defendants generally, or Arresting Officers used excessive force when they: forcefully held Plaintiff against a wall by his neck, shoulder, and chest area; grabbed his phone to prevent him from recording the incident; and forced him into a police cruiser without informing him that he was being arrested, reading him his rights, or explaining why he was being taken to the police station. *Id.* at 4, 9, 11. Plaintiff contends the use of force was inappropriate given that he was unarmed and did not resist arrest. (Doc. 7, at 6–7).

A claim for excessive force requires balancing an "individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). The Sixth Circuit has identified three factors used to determine the reasonableness of the force used by police: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of

the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

As discussed, Plaintiff's Complaint broadly alleges Arresting Officers used excessive force, does not specify who took what actions against him, and fails to include facts asserting the unreasonableness of the arrest. This does not meet the pleading standard required by the Sixth Circuit.

*False Arrest*

Plaintiff's false arrest claim contends Defendants violated his constitutional rights under the Fourth Amendment by forcing him into the police cruiser without probable cause or reasonable belief that he was committing a crime. (Doc. 1, at 13–14). Defendants argue Plaintiff's claim for false arrest consists of blanket allegations lacking specificity and Plaintiff provides no information concerning his arrest. (Doc. 5, at 7).

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). "Probable cause exists for an arrest when the facts and circumstances within the officer's knowledge are 'sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense.'" *Griesmar v. City of Stow*, 2022 WL 17581658, *5 (6th Cir.) (quoting *Weser v. Goodson*, 965 F.3d 507, 513–14 (6th Cir. 2020)). "In determining whether an officer had probable cause, this Court considers the totality of the circumstances, looking to both 'evidence of guilt' and 'exculpatory evidence' available to the officer at the time." *Robinson v. City of Knoxville*, 2025 WL 621451, *4 (*citing Ouza v. City of Dearborn Heights*, 969 F.3d 265, 279 (6th Cir. 2020)).

9

Not only does Plaintiff fail to specify which Officer made the decision to initiate the arrest, the entirety of Count Three solely describes Defendants as a group; it makes no mention of any individual Officer or even Arresting Officers as a sub-group. Without factual allegations identifying what each Officer knew or did at the time of the arrest, Plaintiff's claim consists of mere blanket allegations. Such generalized accusations are insufficient to survive dismissal.

*Unlawful Search and Seizure*

Count Four states Plaintiff had his person and phone seized by "Defendants", and that his phone was later retrieved by "[t]he arresting officer". (Doc. 1, at 14). Legal searches and seizures by law enforcement require probable cause or reasonable suspicion, consent, or a warrant. *See Rodriguez v. United States*, 575 U.S. 348, 365 (2015).

Defendants contend the Complaint fails to allege which Officers took what actions that amounted to an unlawful search and seizure. (Doc. 5, at 8). Plaintiff's Opposition argues Arresting Officers unlawfully seized Plaintiff's personal property when they confiscated his phone without reasonable suspicion, probable cause, consent, or any other lawful justification. (Doc. 7, at 7–8).

Plaintiff fails to allege with sufficient specificity the actions of each individual officer involved in the alleged unlawful search and seizure. While the Complaint asserts facts that, if true, could establish an unlawful seizure of both Plaintiff's person and property, it refers only to "Defendants" without attributing particular conduct to either Officer Durda or Martin. Absent such individualized allegations, the claim cannot proceed against the Defendants as currently pleaded.

Village of Put-In-Bay

Count Six argues Village of Put-In-Bay failed to train and supervise Defendant Officers and conclusory states it has a "policy, practice, and custom of failing to train and supervise police officers" that lead to a deprivation of Plaintiff's constitutional rights. (Doc. 1, at 17). Defendants

10

argue the Complaint fails to properly allege a violation of constitutional rights by the municipality. (Doc. 5, at 9–10).

The Sixth Circuit has stated the elements of failure to train as: "(1) a clear and persistent pattern of illegal activity, (2) which the county knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the county's custom was the cause of the deprivation of [plaintiff's] constitutional rights." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 767 (6th Cir. 2020) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citing *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

While the Complaint broadly asserts a violation of multiple individuals' constitutional rights on the night of the incident, there is no mention of any other instance of illegal activity by Put-In-Bay Police Department or its Officers. And there are no factual assertions as to why the municipality would be aware and responsible. Further, as discussed above, Plaintiff has failed to properly plead any violation of a constitutional right against any Officer. As such, Plaintiff has not sufficiently plead facts against Village of Put-In-Bay for failure to train and supervise.

<u>Put-In-Bay Police Department</u>

Defendants argue police departments are *non sui juris*, or incapable of being sued. (Doc. 5, at 10). Rule 17 of the Federal Rules of Civil Procedure governs capacity to be sued in federal district courts. Fed. R. Civ. P. 17(b)(3). Rule 17 states that capacity to be sued, except individuals and corporations, "shall be determined by the law of the state in which the district court is located." *Id.* Ohio law therefore governs the capacity of Put-In-Bay Police Department to be sued in this matter.

11

Ohio law considers city police departments *non sui juris*; the real party in interest is the city itself. *Parmelee v. Schnader*, 2018 WL 1110474, at *5 (Ohio Ct. App.) (citing *Cooper v. Youngstown*, 2016 WL 5874642, at *6 (Ohio Ct. App.)). For this reason, courts in this District routinely summarily dismiss cases filed against police departments. *See*, *e.g.*, *Manning v. Berling*, 2023 WL 3601494, at *3 (N.D. Ohio) (dismissing plaintiff's complaint because "the City of Toledo 'Police Department' is not an entity subject to suit under § 1983"); *see also Lathan v. City of Cleveland*, 2012 WL 1708762, at *2 (N.D. Ohio) ("It is well-established that police departments 'are not *sui juris* and, therefore, cannot sue or be sued. They are merely sub-units of the municipalities they serve.'") (quoting *Deir v. Lake County*, 2012 WL 1142467, at *3 (N.D. Ohio).

As such, this Court finds Put-In-Bay Police Department lacks capacity to be sued and dismisses the claim against it.

<u>Plaintiff's Request to Amend</u>

In Plaintiff's Opposition, he contends that if this Court agrees with Defendants' arguments in the Motion to Dismiss, he "should be granted leave to amend [his] [C]omplaint to allow for more specific allegations to be delineated and to file the videos as exhibits to the Complaint." (Doc. 7, at 3).

While a court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), the Court must have before it the substance of the proposed amendment to determine whether "justice so requires." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017). Further, "a bare request in an opposition to a motion to dismiss . . . is not a motion to amend." *Louisiana Sch. Emps. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (internal quotation marks and citation omitted).

Plaintiff filed no motion to amend his Complaint, nor did he attach a proposed Amended Complaint or indicate how his allegations would become more specific by using video footage he apparently had before filing his initial Complaint. As such, the Court denies this request.

### CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion to Dismiss (Doc. 5) be, and the same hereby is, GRANTED and all claims against Defendants are DISMISSED; and it is

FURTHER ORDERED that Plaintiffs request to amend the Complaint (Doc. 7, at 10) be, and the same hereby is, DENIED.


 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: July 23, 2025

13